UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SEAN MICHAEL MYERS, and         CASE NO._____
DAKOTA BLUE SERNA
           Plaintiffs             HON. _____
v.
RUTH JOHNSON MICHIGAN        COMPLAINT
SECRETARY OF STATE,
CHRISTOPHER THOMAS, DIRECTOR
OF BUREAU OF ELECTIONS, and
BOARD OF STATE CANVASSERS,
(sued in their official capacities)
           Defendants.

Thomas Lavigne (P58395)        Michael Komorn (P47970)
Cannabis Counsel PLC Law Firm    Law Offices of Michael Komorn
Attorneys for Plaintiffs           Attorneys for Plaintiffs
2930 Jefferson Avenue East       30903 Northwestern Highway, Ste. 240
Detroit, MI 48207            Farmington Hills, MI 48334
(313) 446-2235              (800) 656-3557
tom@cannabiscounsel.com      michael@komornlaw.com

**NOTICE**: THIS COMPLAINT INVOLVES A CLAIM THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.

**NOTICE**: There is no related case in this court concerning some of the same or similar constitutional claims.

## <u>COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF</u>

### <u>INTRODUCTION</u>

NOW COMES PLAINTIFFS, SEAN MICHAEL MYERS AND DAKOTA BLUE SERNA, by and through their attorneys Thomas Lavigne, and Michael Komorn and complains and moves for a temporary restraining order, preliminary and permanent injunction against defendants, and other relief. This action seeks one outcome-- to order defendants to not print any ballots until they canvass and count the petition signatures,

1

including Plaintiffs', and if enough, to place the MILegalize proposal on the ballot of the

next general election due to a declaratory finding that:

    a.  The "rebuttable presumption" burden for any signature on an initiatory petition older than 180 days under MCL 168.472a is unconstitutional;

    b.  The 1986 Board of Canvassers policy to utilize the rebuttable presumption, which all parties acknowledge has never been utilized and is impossible for Plaintiff to comply with, is unconstitutional;

## JURISDICTION & VENUE

1.    Jurisdiction and venue are proper in this federal court as the conduct complained of occurred in the State of Michigan and this Complaint asserts U.S. Constitutional claims providing for declaratory, injunctive and extraordinary relief allowed in this federal district court.

2.    This action challenges the constitutionality under the US Constitution of the rebuttable presumption itself, the 1986 BOC Policy, and any time-limitation in Michigan statute MCL 168.472a for collecting signatures, as applied to petitions to initiate legislation.

## THE CHALLENGED STATUTE

3.    The rebuttable presumption, which is the statute relied upon by Defendants in ignoring their duty to count Plaintiff's signature, was enacted in 1973:

It shall be rebuttably presumed that the signature on a petition that proposes an amendment to the constitution or is to initiate legislation, is stale and void if the signature was made more than 180 days before the petition was filed with the office of the secretary of state.

## THE STATUTORY INITIATIVE SIGNED AND CIRCULATED: MILEGALIZE

4.      The petition plaintiffs circulated and signed is the one initiated by Michigan Comprehensive Cannabis Law Reform Committee a/k/a ("MILegalize"), a ballot question committee organized under Michigan law, and headquartered in Lansing, Michigan. The MILegalize initiative would enact the Michigan Marijuana Legalization, Regulation, and Economic Stimulus Act, which has three basic pillars of policy and would broadly legalize cannabis for adults over the age of 21; create new legislation to supplement and improve on the Michigan Medical Marihuana Act to provide safe access to and regulation for medical marihuana; and allow for the farming of industrial hemp. Additional provisions provide state and local authority to regulate cannabis commerce and use a 40/40/20 tax proceeds division 40% to the School Aid Fund, 40% to the Department of Transportation, and 20 % back to local governments that license and regulate cannabis related businesses in their own communities. The initiative is estimated to save various levels of government hundreds of millions of dollars in costs annually and raise hundreds of millions in dollars in new tax revenue; create 25,000 to 50,000 cannabis industry related new jobs; and eliminate the arrests of approximately 20,000 adults for simple cannabis use and possession every year in Michigan.

5.      The 1986 BOC rebuttable presumption policy purports to require the proponent of an initiative to rebut the presumption posed by MCL 168.472a by either:

      a. Proving that the person who executed the signature was properly registered to vote at the time the signature was executed and;

      b. Proving with an affidavit or certificate of the signer that the signer was registered to vote in Michigan within the '180 day window period' and

further, that the presumption posed under MCL 168.472a could not be rebutted through the use of a random sampling process.

6.     At stake in this case are not only the interests of Plaintiffs, but also the longstanding constitutional rights of approximately 7 million Michigan qualified electors and the MILegalize ballot campaign, to enact legislation through the citizen initiative process.

7.     On June 1, 2016, MILegalize filed approximately 354,000 signatures on petitions, including Plaintiff's, to initiate legislation pursuant to Art 2, Sec 9 to qualify for the statewide ballot. Any campaign seeking to place an initiative on the ballot had to submit at least 252,523 signatures to qualify. MILegalize submitted petitions with potentially more than 100,000 extra signatures than the minimum requisite threshold.

8.     On June 6, 2016, the BOE issued a staff recommendation, to deny ballot access to the MILegalize petition signed by Plaintiff petitions, to the BOC allegedly because MILegalize failed to submit enough signatures for ballot qualification due to more than 200,000 of those signatures, including Plaintiff's, being collected more than 180 days prior to submission, and the basis for not accepting those signatures was the 1986 BOC policy, and on June 9, 2016, the BOC accepted the BOE staff recommendation at a BOC meeting.

9.     MILegalize was able to rebut 137,000-plus signatures at the time of filing.

10.     An actual controversy and actual imminent harm exists because the BOE and BOC have taken adverse action against Plaintiffs as a signers and circulators of said petition, and Plaintiffs must act to preserve their rights.

<u>**PARTIES**</u>

11.     Plaintiff, Sean Michael Myers is a United States Citizen and registered to vote in the State of Michigan, who signed the MILegalize petition more than 180-days before filing with the Defendants.

12.     Plaintiff, Dakota Blue Serna is a United States Citizen and registered to vote in the State of Michigan, who signed the MILegalize petition more than 180-days before filing with the Defendants.

13.     Defendants are sued in their official capacities, acting under color of state law, as state officials and agencies who implement and administer the initiative statutes and regulations. The governor appoints the Board of State Canvassers (BOC). The Secretary of State (SOS) appoints and supervises the director of the Bureau of Elections (BOE), a state agency of the State of Michigan. The BOC consists of 4 members, appointed to the board by the Governor, assisted by the BOE, and by law containing two members of each the Republican and Democratic political parties.

<u>**GENERAL ALLEGATIONS & FACTS ABOUT THE MILEGALIZE CAMPAIGN AND ACTIONS UNDER COLOR OF LAW OF DEFENDANTS IN THEIR OFFICIAL CAPACITIES**</u>

14.     Plaintiff moves, under Fed. R. of Civ. Pro. 65, that a temporary restraining order be issued to restrain the printing of ballots for the November 2016 election, and that this case be expedited so that the voters may have the opportunity they deserve to voice their opinion on the ballot question if Defendants count enough signatures.

15.     There is still time for canvassing and the ballots to be printed with the ballot question included.  Courts can rule expeditiously on elections cases, including ordering

reprint of ballots. *Detroiters for City Council by Districts v Janice Winfrey* (Michigan Court of Appeals, Sept. 22, 2009) ordered a Home Rule City act amendment be placed on the ballot—the mandamus action in that case was filed that year on September 16th, 2009. Similarly the BOE and BOC were seriously prejudiced in 1986 with the *Consumers Power* case, which was filed and the debate at the time was in August of 1986, only a couple months before the election. The ability to litigate these disputes in a much more timely and thoughtful manner exists if the Court acts expeditiously and orders the BOE to begin canvassing the entire set of petitions submitted for whether the signors were qualified electors.

16.     Immediate action is necessary so that Plaintiff's signature is counted, along with the other petition signatures, in part gathered by plaintiffs, and the voters are not deprived of their right to vote on the subject ballot question at the November 8, 2016 regular election, or whatever regular election is next scheduled after these disputes reach final resolution. Additionally, ballots begin to be proofed and printed in September and this issue must be resolved expeditiously in case appeals or further litigation occur.

17.     The Michigan Comprehensive Cannabis Law Reform Committee is a registered Michigan ballot question committee a/k/a MILegalize. The committee is currently comprised of a volunteer board of directors of fifteen registered voters from across the state.

18.     MILegalize formed as a ballot committee in April, 2015, and had its petitions approved as to form by the BOC on June 11, 2015.

19.     MILegalize began circulating petitions on June 25, 2015, on the steps of the Michigan Capitol as an all volunteer effort, with less than $10,000.00 in campaign

contributions, and from that point forward over a course of 11 months raised and spent more than $1.1 million towards achieving ballot access as of June 1, 2016.

20.     On June 1, 2016, MILegalize submitted at least 354,000 signatures, including Plaintiff's, to the Bureau of Elections to qualify for the next general election ballot.

21.     MILegalize is the first grassroots cannabis legalization campaign in the United States to ostensibly qualify for statewide ballot access without national lobbying groups providing resources or large out-of-state funders. If Plaintiff prevails, Michigan will join California, Maine, Massachusetts, Arizona, Nevada, and maybe several other states in voting for cannabis legalization in 2016. If Plaintiff's case is delayed due to litigation, it will likely join other states in 2017 or 2018 when MILegalize would be on the next regular election ballot, joining Colorado, Washington, Oregon, Alaska, and Washington D.C. as legal cannabis states.

22.     In 2016, MILegalize was the only approved ballot committee out of 12 potential registered petitions statewide which met the statutory burden to file enough signatures to qualify for the ballot. The other groups, with the exception of the CBFM campaign, all either quit due to lack of signatures or financial resources to accomplish ballot qualification.

23.     Over a course of 11 months, MILegalize collected over 375,000 signatures, including Plaintiff's, for a statutory initiative, with approximately 1,000 people circulating petitions.

24.     MILegalize spent the majority of the funds it raised paying petitioners to collect signatures.

25.     Upon information and belief, experts estimate that in most instances, especially within a 180-day time limit, it requires at least $2-3 million for a campaign to successfully reach the ballot.

26.     MILegalize hired Practical Political Consulting (PPC) to pre-screen its own petitions to the extent possible.  PPC prepared initial proofs for Plaintiff to rebut any older signatures if necessary, and such proofs were provided to the BOE at the time of filing.

27.     When MILegalize filed its petitions, it included information that could be used for the rebuttal process despite no statutory guidance on what is required to do so. MILegalize submitted this information upfront in good faith in an attempt to rebut the majority of its signatures that may need to go through a rebuttal process and in order to speed up the qualification process.

28.     While Michigan law apparently does not provide for the supplemental filing of additional petitions after June 1, there is no prohibition on rebutting the presumption of any challenged or refused signature with supplementary documentation after the fact if necessary, and MILegalize is able to reasonably assist in clarifying or rebutting the alleged staleness of any signatures if given a proper due process opportunity to do so after canvassing.

29.     There were a number of additional pages filed that would require the opportunity to rebut if MCL 168.472a is enforced, and MILegalize intended on supplementing information on those pages as soon as possible during any due process opportunity to rebut, or, if the BOE or SOS, which have authority to compel clerks to take actions, assist in the rebuttal process (which makes no sense, it is a waste of time because the BOE can

just sample the signatures like it already is legally required to do using the QVF).

30.     Of the lines on the pages documented at the time of filing, according to the affidavit of Alan Fox of PPC:

> - 137,029 lines contain information from QVF and no comment in the EXPLANATION column.  These are our rebuttals
> - 54,669 lines are noted as 'NO REBUTTAL.'  These are signed lines for which we have no rebuttal of the presumption of staleness at this time.
> - 91,570 lines are noted as blank or crossed out or are conceded as invalid for reasons other than the date of signature
> - 1,794 lines were signed on or after December 5, 2015 and are noted as not requiring rebuttal.  Any other line that on its face has a signing date of December 5, 2015 or later but is not noted as such in the file should be similarly treated even if the notation in the file indicates otherwise.

31.     The electronic file submitted along with the petitions is a comma-delimited text file containing 285,061 lines, including a header line with column names.

32.     Despite these efforts and this submission, the campaign provided notice to the BOE that it does not waive any rights or privileges, and reserves all rights, due process and opportunities to hereafter rebut any presumption of staleness raised by the BOE, the BOC, or any other person or entity, with fair and adequate notice and opportunity to be heard.

33.     On June 7, 2016, the Bureau of Elections, acting under color of law, publicly issued a staff report saying that because some of MILegalize's petition signatures, including Plaintiff's, were collected beyond a 180-day window, those signatures, including Plaintiffs, would not be counted towards ballot qualification, and therefore, that the BOE would recommend to the BOC that the campaign had submitted an insufficient number of signatures for ballot qualification.

34.     On June 7, 2016, Governor Snyder signed SB776 into law with immediate effect.

35.     On June 9, 2016, the BOC accepted the staff recommendation to not count all of MILegalize's submitted signatures.

36.     On June 14, 2016, five business days later, MILegalize timely filed suit, stalled in the Court of Claims for two months with no action, then summarily dismissed with no opinion by both the Michigan Court of Appeals and Supreme Court, now on appeal to the US Supreme Court.

37.     If the rule of article 2 section 9, *Wolverine Golf Club*, *Woodland v Michigan Citizens Lobby*, and *Bingo Coalition for Charity--Not Politics v Board of State Canvassers* and the First, Fifth, and Fourteenth Amendments to the US Constitution are not upheld, Plaintiffs will suffer irreparable harm.

38.     Defendants published and distributed a regular (annual or longer) official statement regarding rebuttable presumptions, implying that a campaign can petition beyond 180 days, but leaving vague, even over the years, what the standard was or how it could be achieved. The same language appears to have been used in the few examples of publications from the SOS from various years including 2008 and 2015, in relevant part:

> **Circulation Period**
> Michigan election law, MCL 168.472a, states, "It shall be rebuttably presumed that the signature on a petition that proposes an amendment to the constitution or is to initiate legislation, is stale and void if it was made more than 180 days before the petition was filed with the office of the secretary of state." <u>Given this provision, signatures more than 180 days old on the date an initiative petition is filed are not counted unless shown to be valid by the proponents of the initiative. Information on the procedure for rebutting the presumption of signature invalidity provided under MCL 168.472a is available from the Michigan Department of State's Bureau of Elections</u>. (emphasis added).

39.     Plaintiff's US Constitutional free speech, association, equal protection and due process rights dictate that election deadlines, rules, laws and good order should not be

such a mystery nor subject to such disruption by defendants or the Michigan Legislature in this instance, due to constitutional deference to Art 2, Sec 9.

40.     Plaintiffs have standing because "petition signers [and circulators] possess a legally protected interest in having their signatures validated, invalidated, empowered, or disregarded according to established law....", and because both the BOE and BOC have failed to canvass the MILegalze petition that Plaintiffs signed and circulated.

41.     The legislature already has a constitutional role in the indirect statutory initiative process, constrained to the following: implementing procedures which do not curtail the people's right to initiative, voting on the proposal in 40 session days adopting or rejecting it; and after a measure passes it can amend the law by a 3⁄4 vote in house and senate.

42.     By "curtailing" the signature collection period the 180- day statute "restrict the utilization of the initiative petition and lack any current reason for so doing," and most certainly do not comport with a strict scrutiny analysis applicable in this complaint asserting Plaintiff's US Constitutional free speech, association and due process rights under the First and Fourteenth Amendments.

43.     There is no reason to think that citizen "suspicion" of the legislature, "antagonism" to it, and desire to "control" its power and "curb" its authority have diminished in recent years.  *Deeleuw v State Board of Canvassers*, 263 Mich App 497, 505 (2004).

## COUNT I- INJUNCTIVE RELIEF PURSUANT TO 42 USC SECTION 1983

44.     Plaintiff restates each prior allegation as if restated herein.

45.     Plaintiff brings this civil rights action under 42 USC 1983 et seq. US Constitution First, Fifth and Fourteenth Amendments, and Michigan Constitution Article I, Sections 1,

3, 5, 17, and Article II, Sections 1 and 4, for violation of Plaintiffs' freedom of speech, of association, due process and equal protection rights, applied to the states through the Fourteenth Amendment.

46.     Plaintiff will suffer irreparable harm absent injunctive relief ordering Defendants to abstain from printing the ballots and to canvass and count Plaintiff's signature and the other signatures on the MILegalize petition filed with Defendants June 1, 2016.

47.     Defendant BOE had a clear legal duty to timely canvass and qualify the initiative, which would trigger timelines for creating the ballot summary language, and failed to do so. Plaintiff could not sue for injunctive relief until the petitions had been rejected. Plaintiffs acted timely, filing suit immediately after the Michigan Supreme Court summarily dismissed the suit filed by MILegalize.

48.     This court should issue a temporary restraining order and preliminary and permanent injunction compelling defendants to restrain from printing ballots and to count the Plaintiffs' signature along with all of the other petition signatures and for the BOE to proceed with canvassing and qualifying the initiative on the next regular election ballot, if enough are filed.

49.     Michigan's Supreme Court has recognized that one of the "primary missions" of the Attorney General is to give legal advice to the Legislature, and to departments and agencies of state government. *East Grand Rapids School Dist v Kent County Tax Allocation Bd*, 415 Mich 381, 394; 330 NW2d 7 (1982).

50.     Defendants, state agencies, were on clear legal notice under AG 4813 and AG 5528, that the State of Michigan's official position was that the rebuttable presumption is unconstitutional, at least as applied to statutory initiatives.

51.    It is well-settled Michigan law that state agencies must follow the orders of the attorney general opinions unless a court or other higher authority directs them otherwise. *See Michigan ex rel. Oakland Co. Prosecutor v. Dep't of Corrections*, 199 Mich.App. 681, 691, 503 N.W.2d 465 (1993) (an opinion of the Attorney General is binding on state agencies and officers).

52.    After MILegalize filed 354,000 potentially valid signatures with the Bureau, over 100,000 more than legally required to, and MILegalize having complied with all laws, approvals, rules, policies and procedures to circulate and file initiative petitions otherwise, Plainitiff had a legal right to have its signature and the other petitions canvassed by the BOE, and Defendants had a clear legal duty to canvass the petitions.

53.    The acts required of Defendants to canvass and fairly process Plaintiff's signature and the other petitions for ballot qualification are ministerial, and no other remedy besides an injunction exists to achieve the same result.

54.    The enforcement of both the 1986 policy and the rebuttable presumption of MCL 168.472a violate Plaintiff's US Constitutional free speech, association, equal protection and due process rights, if Plaintiff's signature and the other submitted signatures are not fully canvassed.

### THE 1986 BOC POLICY VIOLATES THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS OF US CONSTITUTION and MICHIGAN CONSTITUTION AND FAILS STRICT SCRUTINY REVIEW BY PLACING UNDUE BURDENS ON A FUNDAMENTAL RIGHT

55.    It is logistically and financially not just overly burdensome, but impossible, to secure affidavits from petition signors more than 180 days old, and to secure affidavits from local clerks.

56.     Local clerks have no legal duty to assist in the rebuttal process, and BOE Director Thomas stated several times that clerks do not have a legal duty to comply with a petitioner's request to assist in rebutting signatures.

57.     Upon information and belief at least one other ballot question committee, the Michigan Cannabis Coalition, also attempted to rebut signatures with county clerks, and out of 83 possible clerks, only the Macom and Antrim county clerks attempted to comply. Regardless, county clerks were not the clerks mandated by the 1986 policy to provide rebuttal certification.

58.     Obviously, if clerks refuse to assist or comply with the rebuttal of signatures, there is no way for a person to actually exercise the right.

59.     Upon information and belief, several clerks refused to assist both MILegalize and the Michigan Cannabis Coalition, and correspondence from the BOE to clerks that contacted the Bureau in writing the BOE instructed clerks that there was no legal authority for them to rebut.

60.     Upon information and belief, none of the 1500-plus elected or appointed local or county clerks in Michigan have ever received any training or guidance from the BOE on the rebuttable presumption policy.

61.     The 1986 BOC policy also seems to run afoul of the 1978 Headlee amendment, purporting to require an unfunded mandate to local clerks to perform a duty state defendants are required to perform (canvassing a statewide petition), while not providing appropriations to do so, in violation of Art 9, Sec 29.

62.     The state's compelling interest in this instance is in requiring that only qualified electors sign petitions to place matters on statewide ballots and preventing election fraud.

To the extent there is an additional interest in the purity of elections, the use of signor affidavits does nothing to satisfy that interest. A signor could attest to being registered, but not actually be. Clerk certification could satisfy qualified elector status with more reliability, but only on a case-by-case basis and only locally, with nowhere near the most superior quantum of proof, the SOS's Qualified Voter File, which the BOE maintains with far superior capabilities for canvassing the petitions.

63.     Requiring either signor or clerk affidavits or certifications is not narrowly tailored to achieve any compelling state interest, nor is it the least burdensome means to accomplish any interest. In fact it is about as burdensome as it can get—it extinguishes any exercise of the right altogether.

64.     The enforcement of both the 1986 policy and the rebuttable presumption of MCL 168.472a harm Plaintiff's US Constitutional First Amendment free speech and association and Fourteenth Amendment due process and equal protection rights if Plaintiffs' submitted signatures and the other petition signatures, collected in part by Plaintiffs, are not fully canvassed.

**BOTH THE TERMS "REBUTTABLE PRESUMPTION" AND "STALE" OF MCL 168.472a  VIOLATE THE US AND MICHIGAN CONSTITUTIONS, THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS AND ARE VOID FOR VAGUENESS**

65.     Under well-established rules of statutory construction, every statute is to be enforced according to its plain meaning.  *Roberts v Mecosta County Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).  And "[e]ach word of a statute is presumed to be used for a purpose."  *Levy v Martin*, 463 Mich 478, 493-494; 620 NW2d 292 (2001), quoting *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).  Effect must be given to

"every word, phrase, and clause in a statute" so as to "avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire and Cas Co v Old Republic Ins Co,* 466 Mich 142, 146; 644 NW2d 715 (2002).

66.     The term "rebuttable presumption" is not defined in Michigan election law.

67.     As noted above, the uses of "rebuttable presumption" in Michigan election law all include the mandatory canvas of the QVF to determine qualified elector status, and the ability to rebut a determination that a person is not a qualified elector as indicated by the QVF, after-the-fact. The same should be true for the unique use of the term "rebuttable presumption" in MCL 168.472a.

68.     The term "stale" is not defined in Michigan election law.

69.     Two of the state's top recognized elections lawyers, Mr. John Pirich and Mr. Gary Gordon, were stumped and could not provide any coherent definition during joint testimony at BOC meetings on when asked what stale meant, and in their written submissions.

70.     The BOE also could not define the term stale. No other testimony was offered by any party as to the definition of stale in MCL 168.472a.

71.     The other argument raised in 1986 for the definition of stale was that it was meant to preclude signatures collected prior to the last gubernatorial election which bounds the petition campaign.

72.     The enforcement of both the 1986 policy and the rebuttable presumption of MCL 168.472a harm Plaintiff's US Constitutional First Amendment free speech and association and Fourteenth Amendment due process and equal protection rights if

Plaintiff's submitted signature and the other petition signatures are not fully canvassed, without regard to the 180-day rule.

## BOTH THE 1986 BOC POLICY AND THE REBUTTABLE PRESUMPTION OF MCL 168.472a VIOLATE 1963 MICHIGAN CONSTITUTION ART 2, SEC 9 AND THEREBY VIOLATES PLAINTIFF'S FIRST, FIFTH AND FOURTEENTH AMENDMENT RIGHTS

73.     The Legislature is prohibited by the self-executing language of Art 2, Sec 9, from enforcing the rebuttable presumption of MCL 168.472a, as Art 2, Sec 9 is self-executing, as opposed to Art 2, Sec 12, constitutional amendments, which section does not have self-executing language.

74.     The Supreme Court already ruled that MCL 168.472 is unconstitutional "The requirements of this section constitute an unnecessary and unreasonable restraint on the constitutional right to initiate legislation, as provided for by Const 1963, art 2, § 9." *Wolverine Golf Club v Secretary of State*, 384 Mich 461; 185 NW2d 392 (1971).

75.     *Wolverine* declared Sec 472 unconstitutional, and the same grounds and reasoning apply in this case to Sec 472a:

> Sec. 472. Petitions to initiate legislation shall be filed with the secretary of state not less than 10 days before the beginning of a session of the legislature. **History:** 1954, Act 116, Eff. June 1, 1955. **Constitutionality:** The requirements of this section constitute an unnecessary and unreasonable restraint on the constitutional right to initiate legislation, as provided for by Const 1963, art 2, § 9. *Wolverine Golf Club v Secretary of State*, 384 Mich 461; 185 NW2d 392 (1971).

76.     Considering the language of Art 2, Sec 9; the *Wolverine* ruling; the AG opinions; and historical facts, MCL 168.472a violates Art 2 Sec 9 on its face and as applied.

77.     The enforcement of both the 1986 policy and the rebuttable presumption of MCL 168.472a harm Plaintiff's US Constitutional First Amendment free speech and association and Fourteenth Amendment due process and equal protection rights if Plaintiff's submitted signature and the other petition signatures are not fully canvassed.

## DUE PROCESS VIOLATIONS, ARBITRARY AND CAPRICIOUS ACTIONS VIOLATE 5TH AND 14TH AMENDMENTS

78.     The enforcement of both the 1986 BOC policy and the rebuttable presumption of MCL 168.472a are both arbitrary and capricious. A ruling of an administrative agency "is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012). In this instance, when defendants did not even enforce the statute in question for 13 years because it was the state's position it was unconstitutional, then defendants attempted to enforce a 1986 policy which the BOC had no authority to enact, then it used that same 1986 policy which everyone acknowledges is unworkable, all while having a computer database, the QVF, which can prove the registration of every Michigan qualified elector, certainly lacks principle and consideration, fails to adjust when clearly needed to real world facts, and is so whimsical when the state is also required under current law to canvass petitions using the QVF!

79.     The failure to canvass Plaintiff's signature and the other petitions, when MILegalize has offered good faith proof of qualified elector status to rebut any presumption of staleness under MCL 168.472a, and MILegalize not being offered a fair opportunity to dispute any presumption after a fair canvass of Plaintiff's signature and the

other petitions has occurred, violates Plaintiffs' due process and equal protection rights, and the due process and equal protection rights of 200,000-plus other signors like Plaintiff whose signatures are more than 180 days old.

80.     Therefore, Plaintiff brings this civil rights action under 42 USC 1983 et seq., US Constitution First and Fourteenth Amendments, and Michigan Constitution Article I, Sections 1, 3, 5, 17, and Article II, Sections 1 and 4 and demands the following relief.

## CONCLUSION & RELIEF REQUESTED

WHEREFORE, Plaintiff seeks remedy and redress from the Court to issue a temporary restraining order followed by a preliminary and permanent injunction for the reasons set forth above and in Plaintiff's brief in support, and that a temporary restraining order be issued immediately, ex parte, and for other relief:

• Expedite this matter on the Court's docket;

• Declare the 1986 rebuttable presumption policy of the Board of Canvassers as unconstitutional under the free speech and association protections of the US Constitution First Amendment and due process and equal protection of the Fourteenth and Fifth Amendments, given the mandate under the Michigan Constitution article 2 section 9, and unenforceable as applied to statutory initiatives;

• Issue a Temporary Restraining Order and enjoin Defendants from enforcement of the rebuttable presumption of MCL 168.472a; the 1986 Board of Canvassers rebuttable presumption policy; and from enforcing SB776, or any other statute or administrative rule which restricts the length of the signature collection period for

statutory initiatives;

• Issue a Temporary Restraining Order ordering the Bureau of Elections and Board of
Canvassers to stop the printing of ballots until they proceed with any canvassing
and qualifications of the petitions in a normal, orderly, timely, and
constitutionally compliant fashion, expedited to be done within 3-days, toward
getting it on the November 2016 ballot;

• Declare all other legislative or administrative restrictions of the length of the signature
collection period unconstitutional under article 2 section 9, and unenforceable as
applied to statutory initiatives;

• Declare SB776 unconstitutional under article 2 section 9, and unenforceable as applied
to statutory initiatives;

• Declare SB776 unconstitutional as a violation of the First Amendment;

• Declare SB776 unconstitutional as a violation of the 14th Amendment.

• Enjoin defendants from applying SB776, or any other statute or administrative rule
which restricts the length of the signature collection period for statutory
initiatives;

• Award Plaintiff's counsel reasonable attorney fees; and

• Grant such other relief as the court finds just or equitable under the circumstances.

Respectfully Submitted:


Dated: September 8, 2016.          By:      s/Thomas Lavigne
                                            Thomas Lavigne (P58395)
                                            Cannabis Counsel, PLC
                                            Michael Komorn (P47970)
                                            Attorneys for Plaintiff