UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL MYERS,
DAKOTA BLUE SERNA, PHIL
BELLFY, JEANNE DAY-LABO,
ANDRE GODWIN, ROBERT PAUL
WIMER III, and STEPHANIE MICHELLE
MAPES,

        Plaintiffs,

v.

RUTH JOHNSON MICHIGAN
SECRETARY OF STATE,
CHRISTOPHER THOMAS
DIRECTOR OF ELECTIONS, and
BOARD OF STATE CANVASSERS,

        Defendants.
_____/

Civil Case No. 16-13255
Honorable Linda V. Parker

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFFS' REQUEST FOR EXPEDITED HEARING

On September 8, 2016, Plaintiffs, initially two signatories to a petition to legalize marijuana in Michigan filed by the Michigan Comprehensive Cannabis Law Reform Committee, also known as MILegalize, initiated this lawsuit challenging Defendants' decision to deny ballot access to the petition for the November 8, 2016 election. In their Complaint, Plaintiffs alleged that Defendants' conduct violated their rights under the First, Fifth and Fourteenth Amendments to

the United States Constitution. Plaintiffs also filed a motion for temporary restraining order, seeking to stop Defendants from printing ballots for the election that did not include the MILegalize initiative. After this Court denied Plaintiffs' motion, concluding that their claims were barred by res judicata, Plaintiffs filed an Amended Complaint adding five individuals as plaintiffs and extending their claims to include any initiative petitions currently filed or ongoing in the State of Michigan, including an anti-fracking petition, which Plaintiffs claim they signed in addition to the MILegalize petition. On November 11, 2016, Defendants filed a motion to dismiss in response to Plaintiffs' Amended Complaint. The motion has been fully briefed.[1] Because res judicata still bars Plaintiffs' claims, and alternatively because the claims fail on the merits, the Court is granting Defendants' motion.

**I.     Standard for Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is

---

[1] The Court finds the facts and legal arguments sufficiently presented in the parties' briefs in support of and in response to Defendants' motion. Accordingly, the Court is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II. Factual & Procedural Background

Prior to June 7, 2016, Michigan law provided that a signature on a petition proposing an amendment to the state constitution or to initiate legislation was "rebuttably presumed … stale and void if the signature was made more than 180 days before the petition was filed with the office of the secretary of state." Mich. Comp. Laws § 168.472a. In 1986, Michigan's Board of State Canvassers ("BSC") adopted a procedure for rebutting the statutory presumption for signatures made outside the 180-day window. This procedure enabled the proponent of an initiative petition to rebut the presumption by:

> (1) Proving that the person who executed the signature was properly registered to vote at the time the signature was executed and;
>
> (2) Proving with an affidavit or certificate of the signer or by every local or municipal clerk that the signer was registered to vote in Michigan within the "180 day window period" and further, that the presumption posed under MCL 168.472a could not be rebutted through the use of a random sampling process.

(Am. Compl. ¶ 17.)

An amendment to Section 168.472a, effective June 7, 2016, removed the ability to rebut the presumption of staleness. Section 168.472a now reads:

4

> The signature on a petition that proposes an amendment to the constitution or is to initiate legislation shall not be counted if the signature was made more than 180 days before the petition is filed with the office of the secretary of state.

Mich. Comp. Laws § 168.472a. Before the amendment became effective, however, in fact on June 1, 2016, MILegalize filed its petition seeking *inter alia* the legalization of marijuana in Michigan with the Michigan Secretary of State. (*Id.* ¶ 25.)

Plaintiffs, registered Michigan voters, signed the MILegalize petition, but did so more than 180 days before its filing. (*Id.* ¶¶ 6-12.) In fact, Michigan's Bureau of Elections ("BOE") determined that over 200,000 of the approximately 354,000 signatures on the petition were collected more than 180 days before its filing. (*Id.* ¶ 25.) Plaintiffs assert that MILegalize was able to rebut 137,000-plus signatures at the time of filing;[2] however, this still did not provide them with the 252,523 signatures required to place the petition on the ballot.[3] (*Id.* ¶¶ 25, 27.)

---

[2] When it filed the petition, MILegalize included a statement signed by its attorney and an affidavit executed by a consultant purporting to rebut the presumption of staleness as to 137,029 signatures. (*See* Defs.' Resp. Br. to Pls.' Mot. TRO at 3-4, ECF No. 7 at Pg ID 143-44.) BOE staff concluded that these attempts were deficient under BSC's rebuttable presumption policy because the affidavits did not prove that those who signed more than 180 days before the filing date were, in fact, registered to vote on the date they signed and the affidavits were not from a clerk or a petition signer. (*Id.*)

[3] Article 2, Section 9 of the Michigan Constitution provides that a legislative initiative requires signatures totaling at least 8% of the total vote cast for all

Therefore, on June 6, 2016, BOE staff recommended denying ballot access to the MILegalize petition. (*Id.* ¶ 26.) The BOE accepted the staff recommendation on June 9, 2016. (*Id.* ¶ 62.)

On June 16, 2016, MILegalize filed an action in the Michigan Court of Claims against the Michigan Secretary of State, Director of the BOE, and the BSC challenging the BSC's application of Section 168.472a.[4] (*See* Defs.' Resp. to Pls.' Mot. TRO, Ex C, ECF No. 7-4.) In the complaint, MILegalize argued that the statute infringed on the right to utilize the initiative process under Michigan Constitution Article 2, Section 9. (*Id.*) MILegalize also asserted that the statute violates the First, Fifth, and Fourteenth Amendments to the Michigan and United States Constitutions. (*Id.*)

On August 23, 2016, the Court of Claims granted the defendants' motion for summary disposition. (*Id.*, Ex. D, ECF No. 7-5.) Based on the Michigan Supreme Court's decision in *Consumer Power Co. v. Attorney General*, 392 N.W.2d 513

---

candidates for governor at the last preceding general election at which a governor was elected. For the 2016 election, that number was 252,523.

[4] "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, a court may take judicial notice of "other court proceedings" without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008)).

(Mich. 1982), the Court of Claims ruled that Section 168.472a is constitutional and rejected MILegalize's constitutional challenges to BSC's procedure for rebutting the presumption of staleness of petition signatures. (*Id*.)

MILegalize appealed the Court of Claims' decision to the Michigan Court of Appeals, which denied the appeal "for lack of merit in the grounds presented" on September 7, 2016. (*Id*, Ex. E, ECF No. 7-6.) The Michigan Supreme Court denied MILegalize leave to appeal in an order issued on the same date. (*Id*., Ex. G, ECF No. 7-8.) As stated earlier, two individuals who signed the MILegalize petition outside the 180-day window initiated this lawsuit on September 8, 2016. Those individuals are Plaintiffs Sean Michael Myers and Dakota Blue Serna.

Mr. Myers' and Mr. Serna's Complaint, which is identical in many respects to the complaint filed in the Michigan Court of Claims' case, was prepared by the same law firm and attorneys: Thomas Lavigne and Matthew R. Abel of Cannabis Counsel, PLC. As reflected earlier, Mr. Myers and Mr. Serna also filed a motion for TRO, for which this Court held oral argument on September 13, 2016. The Court denied the motion on the record, concluding that res judicata bars Plaintiffs' claims and, alternatively, that it was too late in the election process for the Court to enter any order enabling the MILegalize petition to appear on the November 8, 2016 ballot. (*See* Defs.' Reply, Ex. A, ECF No. 23-2.) Essential to the Court's

7

ruling was its finding that Mr. Myers and Mr. Serna were in privity with MILegalize.

The Amended Complaint, filed September 28, 2016, added five more individuals who signed the MILegalize petition outside the 180-day window and expanded Plaintiffs' claims to assert that it is unconstitutional to apply the June 7, 2016 amendment to Section 168.472a to the MILegalize petition as it was initiated before the amendment. The Amended Complaint also asserts a violation of Plaintiffs' rights under the federal Voting Rights Act. Finally, it challenges the constitutionality of BSC's rebuttable presumption procedure and application of the amended statute as applied to other ballot initiative petitions, such as the anti-fracking petition that the five new Plaintiffs also signed.[5]

---

[5] Notably, according to Plaintiffs' Amended Complaint, the Anti-Fracking petition continues to be circulated and has not been filed with the Secretary of State. (Am. Compl. ¶ 24.) As such, it is not evident whether the initiative would be rejected due to a lack of signatures inside the 180-day window and thus whether there is (or will ever be) a case or controversy with respect to that initiative. The same is true as to the other ballot initiatives mentioned in Plaintiffs' Amended Complaint. Thus, Plaintiffs cannot demonstrate that they have suffered a concrete and particularized injury with respect to these ballot initiatives that is fairly traceable to the challenged conduct. In other words, they lack standing to pursue any claims in connection with these other petitions.

### III. Applicable Law and Analysis

#### A. Res Judicata

Res judicata refers collectively to claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' " *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion, in contract, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id*. (quoting *New Hampshire*, 532 U.S. at 748-49). Res judicata prevents inconsistent decisions, conserves judicial resources, and protects vindicated parties from vexatious litigation. *Id*.; *see also Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 596 N.W.2d 153, 157 (Mich. 1999). "A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state." *Dubuc v. Green Oak Tp.*, 312 F.3d 736, 744 (6th Cir. 2002) (citing 28 U.S.C. § 1738; *Heyliger v. State Univ. and Cmty. Coll. Sys.*, 126 F.3d 849, 851-52 (6th Cir. 1997)). Thus, Michigan law on preclusion governs the preclusive effect of the Michigan Court of Claims' decision in the MILegalize action on the present action.

In Michigan, the elements of claim preclusion are:

> (1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies.

*Dubuc*, 312 F.3d at 747 (citing *Sloan v. City of Madison Heights*, 389 N.W.2d 418, 422 (Mich. 1986); *Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992)). There can be no dispute that the MILegalize action resulted in a decision on the merits, with the exception of MILegalize's challenge to the retroactive application of amended Section 168.472a to ballot petitions initiated before the amendment.[6] Plaintiffs dispute the existence of the second and third elements, however.

As to the second element, Plaintiffs argue that their claims alleging violations of their right to travel and the Voting Rights Act could not have been resolved in the first action because MILegalize, as a ballot committee, does not have a race or right to travel. This argument ignores the complaint MILegalize filed in the Court of Claims, however. That complaint—substantially overlapping

---

[6] The Court of Claims found no case or controversy relative to MILegalize's claim that retroactive application of the amendment to its ballot initiative would be unconstitutional, as it found no evidence that "[BSC] or any governmental agency sought to enforce on plaintiff[] any provision of [the amended statute]." (Defs.' Resp. to Pls.' Mot. TRO, Ex. D at 13, ECF no. 7-5 at Pg ID 269.) Plaintiffs do not set forth such evidence in their Amended Complaint, although they now also seek a declaratory judgment that the amendment, itself, is unconstitutional. MILegalize could have raised the same claim in the earlier litigation. In any event, as discussed *infra* the Court finds no merit to the claim.

the initial Complaint filed in this action—undeniably asserted violations of the First, Fifth, and Fourteenth Amendments to the Michigan and United States Constitutions.

Moreover, MILegalize expressly alleged that it possessed standing "because petition signers possess a legally protected interest in having their signatures validated, invalidated, empowered, or disregarded according to established law[.]" (*See* Defs.' Resp. to Pls.' Mot. for TRO, Ex. C ¶ 131, ECF No. 7-4.) In other words, MILegalize pursued its suit on behalf of, or as a representative of, the petition signers. As such, MILegalize could have asserted the race and travel related claims in the Court of Claims action that Plaintiffs now expressly assert. The Michigan Supreme Court "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citation omitted).

With respect to the final element, the Michigan Supreme Court has held that, for purposes of res judicata, "[t]o be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). A finding of privity requires "a substantial identity of interests" and that "the interests

11

of the nonparty [were] presented and protected by the party in the [earlier] litigation." *Id.*; *see also Bates v. Twp. of Van Buren*, 459 F.3d 731, 735 (6th Cir. 2006) (discussing *Adair*'s requirements for privity and concluding that a third stated "requirement"—a "working functional relationship"—is in fact not necessary to show privity).

In *Adair*, the Michigan Supreme Court held that res judicata barred a challenge to the state's education funding plan by taxpayers and school districts, even though prior litigation arising from the same operative facts was asserted by different taxpayers and school districts.  Under what is commonly known as the "Headlee Amendment," the Michigan Constitution requires the state to (1) provide funding necessary to cover the costs of existing activities or services mandated by the legislature and (2) completely fund the necessary costs of new or increased activities or services mandated by the legislature.  680 N.W.2d at 390.  After several rounds of litigation concerning the state education funding plan's satisfaction of the first requirement, a group of plaintiffs that included some school districts and taxpayers not party to the first litigation, challenged the state funding plan's compliance with the second requirement.  The Michigan Supreme Court dismissed the subsequent claims on the ground they could have been asserted in the earlier lawsuit.

The Court held that the plaintiffs who were not parties in the earlier litigation had identical interests to the earlier plaintiffs:

> In litigation concerning the [funding provisions] of the Headlee Amendment …, where a taxpayer or a local unit of government is suing the state, the issue is whether the Legislature's act is unconstitutional as it applies not just to a single local unit of government, but to all local units affected by the legislation. In such cases, the interests of all similar local units of government and taxpayers will almost always be identical. If the relief sought by one plaintiff to remedy a challenged action is indistinguishable from that sought by another, such as when declaratory relief is sought concerning an act of the Legislature establishing the proportion of state funding for local government units, the interests are identical.

*Id*. at 396. The *Adair* Court concluded that the plaintiffs in the later-filed action were in privity with the plaintiffs in the earlier litigation because "[t]he taxpayer parties have the same interest: that mandated activities are funded as they are required to be under the Headlee Amendment." *Id*. at 397.

MILegalize and Plaintiffs in the current lawsuit have the same interests and seek the same relief in connection with the MILegalize petition. Specifically, they request a finding that (a) the rebuttable presumption burden for a signature older than 180 days is unconstitutional; (b) BSC's 1986 policy for rebutting the presumption of staleness is unconstitutional and the qualified voter file should be used instead; and (c) the June 2016 amendment to Section 168.472a is unconstitutional and cannot be applied retroactively to petitions initiated prior to its

13

enactment. (*See* Defs.' Resp. to Mot. TRO, Ex. C at 2, ECF No. 7-4 at Pg ID 209; Am. Compl. at 2-3, ECF No. 15 at Pg ID 337-38.) In short, regardless of whether the litigation is brought by a ballot committee or a signer or circulator of a ballot initiative, the issue is whether Section 168.472a and Defendants' actions are constitutional as applied to all affected ballot committees and registered voters. Thus, the Court concludes that Plaintiffs are in privity with MILegalize.

As such, all three res judicata requirements are satisfied. Plaintiffs' claims are barred by res judicata.

### B. Merits of Plaintiffs' Claims

#### 1. Whether Section 168.472a's 180-Day Window Infringes on the Right to Travel[7]

Plaintiffs contend that requiring ballot initiatives to be signed within 180 days of their filing violates the right to travel. Plaintiffs' allegations, however, contain only conclusory allegations devoid of factual content to support their claim. Moreover, the Court cannot discern how the statute interferes with this right.

The United States Supreme Court has identified three components of the right to travel:

---

[7] Throughout their Amended Complaint, Plaintiffs assert that Section 168.472a harms their due process and equal protection rights. Plaintiffs fail to elaborate, however, on how those rights are violated. As stated earlier, a complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

14

> It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens in that State.

*Saenz v. Roe*, 526 U.S. 489, 500 (1999). "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *League of United Latin Am. Citizens (LULAC) v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (citing *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986)). "Something more than a negligible or minimal impact on the right to travel is required before strict scrutiny is applied." *Id.* (citing *State of Kansas v. United States*, 16 F.3d 436, 442 (D.C. Cir. 1994). As reflected in their response to Defendants' motion to dismiss, Plaintiffs maintain that Section 168.472a deters travel in that a person who signs a ballot initiative will be deterred from subsequently moving out of state. (*See* Pls.' Resp. Br. at 20-21, ECF No. 20 at Pg ID 514-15.)

Nothing in the statute, however, prevents or restricts an individual from travelling freely from one state to another. After signing a ballot initiative, individuals remain free to move wherever they wish. If an individual signs an initiative more than 180 days before its filing, his or her signature will not be counted according to the terms of the statute. Out-of-state residents, however, do

not have a federal constitutional right to have their voices heard on a Michigan ballot initiative, however. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68-69 (1978) ("[O]ur cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders."); *Mixon v. State of Ohio*, 193 F.3d 389, 404 (6th Cir. 1999) ("Residency is the key element in determining whether legislation violates the one-person, one-vote doctrine."). Nor does the Michigan Constitution confer such a right. *See* Mich. Const. Art. 2, § 9 ("To invoke the initiative or referendum, petitions signed by a number of *registered* electors …").

Plaintiffs fail to allege facts to support their claim that Section 168.479a violates the First Amendment.

### 2. Whether Section 168.472a's 180-Day Window Violates the Voting Rights Act

The Voting Rights Act ("VRA") is violated if "based on the totality of the circumstances, it is shown that the political processes *leading to nomination or election* in the State or political subdivision are not equally open to participation by members [based on race, color, or on account of membership of a language minority group]. 52 U.S.C. § 10301(b) (emphasis added). Defendants argue that initiatives and petitions do not fall under the purview of the VRA and therefore Plaintiffs' claim fails. Alternatively, Defendants contend that Plaintiffs fail to allege facts establishing a violation of the statute.

16

While the Sixth Circuit does not appear to have addressed the issue, those Circuits that have conclude the VRA is inapplicable to the petition process. *Padilla v. Lever*, 463 F.3d 1046, 1051-53 (9th Cir. 2006) (en banc) (rejecting Spanish-speaking voters' claim against county officials and proponent of petition to recall school board members that the recall petitions violated the VRA because they were not translated into Spanish); *Montero v. Meyer*, 861 F.2d 603, 607-08 (10th Cir. 1988) (holding that the district court erred in finding the VRA applicable to petitions initiated to amend state constitution); *Delgado v. Smith*, 861 F.2d 1489, 1496 (11th Cir. 1988) (concluding that citizen initiative petition seeking to amend the Florida Constitution did not fall within the purview of the VRA); *see also Gerena-Valentin v. Koch*, 523 F. Supp. 176, 177 (S.D.N.Y. 1981) (dismissing claims under the VRA arising out of the government's failure to provide bilingual petitions). Given the silence of the Sixth Circuit on this issue, and this Court's analysis of Defendants' alternative basis for dismissing Plaintiffs' VRA claim, it finds it unnecessary to address this argument.

Specifically, Plaintiffs fail to allege facts suggesting that the 180-day window in Section 168.472a has a disparate impact on African-American voters. Plaintiffs assert that a disproportionately high percentage of African-American voters signed the MILegalize petition. (Am. Compl. ¶ 79.) Specifically, according to Plaintiffs, while African-Americans represent only 14% of Michigan's

population, they represent 27.4% of the individuals who signed the petition. (*Id.*
¶¶ 82, 83.) In comparison, Caucasians represent 82.6% of Michigan's population,
but only 69.3% of the MILegalize petition signors. (*Id.*) Plaintiffs therefore
conclude that their "data indicates that African-American voters are disparately
impacted by the rebuttable presumption policy at a rate over twice their relative
general population levels." (*Id.* ¶ 85.) Even assuming that Plaintiffs accurately
have assessed the race of the petition signers—something Defendants challenge as
the petition does not require signers to list their race—their data does not support
their assertion of disparate impact.

African-American voters in Michigan may support the legalization of
marijuana by a percentage greater than their representation in the state's
population, as Plaintiffs strenuously assert in the Amended Complaint. This fails
to demonstrate, however, that the 180-day window in Section 168.472a disparately
impacts African-American voters. To reach that conclusion, Plaintiffs would need
to show that a disproportionate number of African-Americans signed the petition
outside that window. Plaintiffs' data shows otherwise.

According to Plaintiffs' figures, of the individuals who signed the petition
before December 5, 2015 (i.e., 180 days before its filing), 69.2% were Caucasian
and 28% were African-American. (Am. Compl. ¶ 84.) These figures are almost
identical to each group's representation of the overall signers (69.3% for

Caucasians; 27.4% for African-Americans). As such, any difference in the impact of the 180-day window on Caucasian and African-American signers is negligible.

For the above reasons, the Court is dismissing Plaintiffs' claim that Section 168.472a violates the VRA.

### 3. Whether the BSC's 1986 Rebuttable Presumption Policy or Amended Section 168.472a Violate the Michigan Constitution

Relying on the Michigan Supreme Court's decision in *Wolverine Golf Club v. Secretary of State*, 185 N.W.2d 932 (1971), Plaintiffs allege in their Amended Complaint that the self-executing language of Article 2, Section 9 of the Michigan Constitution prohibits the Michigan legislature from enforcing Section 168.472a. Plaintiffs asserted the same argument in the Michigan Court of Claims and the court provided a lengthy recitation of case law subsequent to *Wolverine Golf Club* to explain why Section 168.472a is constitutional. (*See* Defs.' Resp. to Pls.' Mot. TRO, Ex. D, ECF No. 7-5.) This Court concludes that the reasoning provided therein leads to the correct holding, which the Court concludes leads to the correct holding that the statute—whether with or without the rebuttable presumption provision—does not violate the Michigan Constitution. Needless to say, in *Consumers Power Co. v. Attorney General*, 392 N.W.2d 513 (Mich. 1986), the Michigan Supreme Court held that Section 168.472a is constitutional. This Court

must follow that decision.[8] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

## IV. Conclusion

For the reasons discussed, the Court concludes that the claims asserted in Plaintiffs' Amended Complaint are barred by res judicata. Alternatively, the Court holds that Plaintiffs fail to state a claim upon which relief may be granted.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (ECF No. 16) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' request for an expedited ruling is **DENIED AS MOOT**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 12, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 12, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

---

[8] The Michigan Supreme Court's rationale in *Consumers Power* applies equally to whether Section 168.472a, as amended in June 2016, violates Article 2, Section 9 of the Michigan Constitution.